# IN THE UNITED STTES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN A. BRUSSEAU )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND SECURITY )<br>**Serve:** 245 Murray Lane, SW )<br>       Washington, DC 20528-0485 )<br>)<br>U.S. DEPARTMENT OF JUSTICE )<br>**Serve:** 950 Pennsylvania Avenue, NW )<br>       Washington, D.C. 20530-0001 )<br>)<br>   Defendants. ) | Case No.1:20-cv-01364 |

## **COMPLAINT**

COMES NOW the Plaintiff, JOHN A. BRUSSEAU ("Special Agent Brusseau"), by counsel, seeking declaratory, and monetary relief pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a et seq. and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, against the Department of Justice (DOJ), the Department of Homeland Security (DHS), the DHS component agency U.S. Immigration and Customs Enforcement (ICE), the DHS/ICE subcomponent agency of Homeland Security Investigations (HSI), and the DHS/ICE subcomponent agency the Office of Principal Legal Advisor's Office (OPLA). Despite pending investigations, the DOJ and DHS (and its components), in violation of the Privacy Act, turned over personnel information about Special Agent Brusseau without notifying Special Agent Brusseau or seeking or obtaining a waiver as required by 5 U.S.C. § 552a(e)(6) of the Privacy Act.

**Parties**

1. Plaintiff John Brusseau is a citizen of the United States of America and the Commonwealth of Virginia. He resides in Burke, Fairfax County, VA.

2. Defendant DHS is an agency of the United States of America under 5 U.S.C. § 552a(a)(1). Defendant DHS is headquartered at 245 Murray Lane, SW, Washington, DC 20528.

3. ICE is a component of DHS. ICE is headquartered at 500 12th Street SW, Washington, DC 20536.

4. HSI is a component of ICE and DHS, with field offices in many locations, including 12200 Sunrise Valley Drive, Reston, Virginia 20191.

5. Special Agent John Brusseau is an employee of Defendant HSI.

6. ICE Office of Principal Legal Advisor's Office (OPLA) is also a component of ICE. Among its duties, OPLA provides legal advice and support to ICE and its components (including HSI).

7. Defendant Department of Justice (DOJ) is an agency of the United States of America under 5 U.S.C. § 552a(a)(1). The primary address for U.S. DOJ is listed as 950 Pennsylvania Avenue, NW Washington, D.C. 20530-0001

8. Accordingly, each of the Defendants, DHS (and its components involved: ICE, OPLA, and HSI) and DOJ, is an agency within the meaning of the Privacy Act

9. Each of the Defendants, including their component agencies, has been in possession and/or control of records pertaining to Special Agent Brusseau, participated in the unlawful and inappropriate disclosure of those records, and failed to take appropriate action after discovering the inappropriate and unlawful disclosure of those records.

## Jurisdiction & Venue

10. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552a(g)(5).

11. Venue is appropriate in the Eastern District of Virginia, under 5 U.S.C. § 552a(g)(5).

## Facts

**Criminal Investigation by HSI**

12. As a Special Agent of HSI, Special Agent Brusseau has a duty to investigate administrative and criminal violations of United States law.

13. Pursuant to his duties, beginning in 2011, Special Agent Brusseau was involved in an HSI investigation of two defense contractors and their related entities.

14. The investigation concerned Unitrans International Inc., a privately-held Virginia defense contracting company with a principal office at 1902 Campus Commons Dr., Suite 415, Reston, VA, 20191 (together with its related entities, it will collectively be referred to as "Unitrans" herein).

15. The investigation also concerned other major United States defense contractors: related entities Anham FZCO, a Dubai-based corporation formed under the laws of the United Arab Emirates, and Anham USA, Inc., a Virginia corporation (collectively "Anham"). Anham is also a major United States defense contractor. Anham also has offices around the world including Amman, Jordan.

16. At the time, Anham and Unitrans shared the same CEO and certain other officers and employees.

17. This investigation concerned money laundering, violations of U.S. sanctions against Iran, and fraud in relation to U.S. government contracts held by Anham as prime contractor, and

involving Unitrans as subcontractor, providing material and logistical support to U.S. troops in Afghanistan and the Middle East.

18. The Department of Justice eventually charged officers of Unitrans and Anham with major fraud against the United States, conspiracy to violate the International Emergency Economic Powers Act (IEEPA), violation of the IEEPA, and conspiracy to launder money.

19. Ultimately, Unitrans and the corporate officers entered into non-prosecution agreements with the DOJ.

20. As part of its settlement and non-prosecution agreement, Unitrans agreed to pay $31.5 million as a combined criminal monetary penalty and victim compensation amount. Unitrans, Anham, and certain related parties also agreed to pay $27 million to resolve allegations under the False Claims Act and related civil matters.

**False Allegations against Special Agent Brusseau**

21. In 2017, Bruce Baird, an attorney for Covington and Burling LLP, represented Anham as legal counsel. Mr. Baird, on behalf of Anham, submitted false information to James Gelber (a trial attorney employed by the DOJ) alleging that Special Agent Brusseau (1) disclosed confidential information about Anham's Finance Director Marwan Belbeisi (also known as Marwan Al Mutaz Al Balbisi) to a former Anham employee and (2) asked the former employee to pass illegal promises and threats about government actions to Mr. Belbeisi.

22. The allegations included a transcript of text messages, purportedly between the witness that spoke to Special Agent Brusseau ("the Witness") and Mr. Belbeisi, used to support the allegations.

23. The transcript of text messages submitted by Counsel for Anham to the DOJ was falsified and/or manipulated.

24. The transcript submitted to the DOJ contains material about Special Agent Brusseau that was not originally part of the transcript; other information had been removed from the transcript.

25. The attorneys representing Anham submitted the allegations and the falsified text messages about Special Agent Brusseau, one of the primary investigators into the matter, in an effort to obstruct the investigation into Anham.

26. Once Special Agent Brusseau was notified of the false allegations against him, he self-reported the allegations to the ICE Office of Professional Responsibility (OPR) so that OPR could conduct an investigation.

27. OPR conducted an investigation, but Special Agent Brusseau's knowledge, no findings were ever made against Special Agent Brusseau, and no disciplinary action, or even a reprimand, was ever imposed, as the allegations were, in fact, false; Special Agent Brusseau acted appropriately during his role in the investigation of Unitrans and Anham.

**Inappropriate Disclosure**

28. While the criminal investigation against Unitrans and Anham was pending and the internal investigation against Special Agent Brusseau as a result of Mr. Baird's allegations was still open, Anham sought, by counsel (Bruce Baird and Kevin Barnett of Covington and Burling), and the DOJ and DHS released, personnel information about Special Agent Brusseau.

29. Bruce Baird filed a FOIA request for information related to the investigation into Special Agent Brusseau on behalf of Mr. Belbeisi, Anham's Financial Director.

30. The FOIA request was denied because the information related to an open criminal investigation.

31. On November 27, 2018, Kevin Barnett then filed a FOIA suit on behalf of Anham in the U.S. District Court for the District of Columbia, civil case number 1:18-cv-02773.

32. During the course of the suit, the Defendants ultimately agreed to release and did voluntarily disclose Special Agent Brusseau's protected personnel files related to his investigation of Anham and the OPR Investigation of Special Agent Brusseau (hereinafter "the Disclosure").

33. Mr. Baird and Mr. Barnett sought information regarding DHS's handling of Mr. Baird's false allegations against Special Agent Brusseau in an effort to undermine Special Agent Brusseau's professional reputation and credibility.

34. The information disclosed by the Defendants included: the false allegations against Special Agent Brusseau and his professional reputation for honesty and integrity; the falsified text messages alleged to support the allegations; information indicating that DHS conducted an investigation into Special Agent Brusseau as a result of the false allegations, and other protected information including the name and personal identifying information of a protected source of information and other source identity information that ultimately harmed the criminal investigation (Disclosed Information). Notably, the Disclosed Information did not include the result of DHS's investigation of Special Agent Brusseau: DHS never made a finding against Special Agent Brusseau and never imposed any discipline or reprimand against him.

35. The information sought, and disclosed by the Defendants, was protected by the Privacy Act, because the information was part of Special Agent Brusseau's personnel file.

36. This Disclosure about Special Agent Brusseau was made without notifying Special Agent Brusseau or the DOJ prosecuting attorney in the Anham criminal case.

37. This Disclosure was made without seeking or obtaining Special Agent Brusseau's written consent.

38. If the Defendants had notified Special Agent Brusseau or sought his consent, he could have alerted the Defendants to the fact that the Disclosed Information related to an open criminal investigation and would not be appropriate to release.

39. Further, Special Agent Brusseau would not have consented to the release.

40. ICE OPLA contacted Special Agent Brusseau after the Disclosure.

41. OPLA did not alert Special Agent Brusseau to the fact that hundreds of pages of records about him were released; worse, OPLA falsely led Special Agent Brusseau to believe that a release of records was only contemplated, but had not yet occurred.

42. Special Agent Brusseau asked to see the documents before their release and asked how soon he would receive them to review (not knowing they had already been released without his consent), and was only told by the Chief Government Information Law Division of OPLA "we will let you know" and did not otherwise receive a response.

43. After Special Agent Brusseau discovered the Disclosure and despite multiple requests, the DOJ and DHS never even let Special Agent Brusseau see what information about him was released to counsel for Anham, until May 26, 2020 in response to Special Agent Brusseau's Privacy Act request after he sought legal assistance.

44. To Special Agent Brusseau's knowledge, the DOJ and DHS never sent a claw-back notice for this wrongly disclosed information and never notified the court overseeing the FOIA civil action about the improper disclosure, based on false information and false representations, and in violation of the Privacy Act.

**COUNT I – Violation of Privacy Act (5 U.S.C. 552a(g)(1)(D))**

45. Plaintiff incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

46. The Privacy Act provides that "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by or with the prior written consent of, the individual to whom the record pertains . . . ." 5 U.S.C. § 552a(b).

47. None of the exceptions to 5 U.S.C. § 552a(b) apply to the Disclosure.

48. The Disclosed Information was a record in a system of records held by Brusseau's employing agency.

49. The Privacy Act also imposes on the Defendants the requirement that "prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section," Defendants must "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." 5 U.S.C. § 552a(e)(6).

50. The Disclosure was not made pursuant to 5 U.S.C. § 552a(b)(2) or required by 5 U.S.C. § 552.

51. By releasing hundreds of pages of protected information relating to Special Agent John Brusseau and the open criminal investigation, including information identifying him by his name or initials, without his consent, DHS and DOJ are in violation of 5 U.S.C. § 552a(b) and 5 U.S.C. § 552a(e)(6).

52. This release of information adversely effected John Brusseau in a number of ways:

a. The released materials contain serious and deeply troubling, yet false, allegations against Plaintiff.

b. These allegations include that Plaintiff engaged in prosecutorial misconduct and serious ethical violations by (1) giving threats and promises to witnesses and potential criminal defendants and (2) revealing protected personally identifiable information.

c. This Disclosed Information, now made public by the information release in question, is an undeserved defamatory blight on the professional reputation of Special Agent Brusseau.

d. These false allegations were unaccompanied by the determination of Plaintiff's employer that it would not make a finding of wrongdoing or impose discipline.

e. The information was released to a party and representing law firm that had a vested interest in destroying Plaintiff's character and reputation, as doing so would aid the firm's ability to undermine the investigation in which Plaintiff participated against the firm's client, Anham.

f. In fact, Anham and/or counsel for Anham had a such a desire to destroy Special Agent Brusseau's reputation that one of the parties or someone connected with the effort falsified text messages of the Witness to falsely attribute improper statements to Special Agent Brusseau that Special Agent Brusseau never made.

g. The Disclosed Information damaged Plaintiff's reputation for character generally, and detrimentally impacts his current employment, as well as future employment, now that this information has been publicly released.

    h. A Google search for "John Brusseau Homeland Security" brings to the forefront the FOIA suit, references to the information released, and importantly, the damaging, yet false, allegations made against Special Agent Brusseau.

    i. Once released to the public, the information is never fully able to be retracted and may always be linked to Special Agent Brusseau, despite the fact that the allegations made were false and that the confidential personnel information released was in violation of the Privacy Act.

    j. The "adverse effect" on Special Agent Brusseau includes mental distress, embarrassment, and emotional harm, but is not limited to these.

53. The adverse effect also includes the actual and special damages specified below.

    a. The public release of the false information has put a cloud on Plaintiff's reputation, directly causing economic and pecuniary harm in that it prevents his promotion while at HSI and reduces his job marketability upon leaving or retiring from HSI.

    b. But for the public release of false information with the government's imprimatur, Special Agent John Brusseau would likely have been promoted to a GS-14 position in his agency, based on his years on the job, experience, positive reviews, accomplishments, and promotions score report in the ninety-sixth percentile in 2014.

    c. This promotion would have resulted in an annual salary difference of at least $12,000 per year.

    d. Special Agent Brusseau's value in the Washington DC metropolitan area job market was immediately and significantly diminished due to the wrongful Disclosure of false information. The information wrongly released about Special

      Agent Brusseau, falsely impugning his professional reputation for honesty and integrity, is the kind of information that will strongly impact the job market for consultants leaving government jobs for the private sector post-retirement.

e. As the false allegations threaten to cause Special Agent Brusseau to lose the value of his experience, specialization, and training, his earning potential for the future is drastically reduced as a result of the Privacy Act violation. Special Agent Brusseau will experience likely greater than a $200,000 loss just in the first five years after leaving HSI, compared to his earning ability absent the wrongful Disclosure.

f. The Plaintiff plans to work at least fifteen (15) years after retiring from government service.

g. Because of Defendants' hiding the release about this information, Special Agent Brusseau was not even able to hire his own legal counsel to attempt to prevent or mitigate irreparable harm until well after the events, and after the information had time to disseminate.

h. A prosecuting attorney assigned to the Criminal Investigation of Anham made statements acknowledging the harm the information released about Special Agent Brusseau would have on Special Agent Brusseau's career. The prosecuting attorney warned other coworkers to "stay away from John Brusseau" implying that the attorney feared their careers may be negatively affected by virtue of being associated with Special Agent Brusseau and the allegations made against him.

i. If the allegations, inappropriately disclosed by the Defendants could impact the careers of those associated with Special Agent Brusseau, they certainly impact Special Agent Brusseau's career himself.

    j.  Further, Special Agent Brusseau has paid out of pocket expenses to consult with a clinical psychologist and counselor to address the stress, betrayal and other ramifications of the Defendants' wrongful Disclosure, breach of trust, and failure to remedy the problem.

54. DOJ and/or DHS knowingly and intentionally released personnel information about Special Agent Brusseau. This disclosure was done in clear violation of the Privacy Act which prohibits such disclosure without Special Agent Brusseau's consent (which was never sought or obtained) or a specific exception (none of which apply here).

55. In the alternative, DOJ and/or DHS recklessly or with more than gross negligence, released Plaintiff's personnel information without regard to whether the Disclosure was prohibited by the Privacy Act and in violation of Plaintiff's rights.

56. In addition, even after it was plain that the Disclosure was inappropriately made and in contravention of the Privacy Act, Defendants knowingly and intentionally participated in a cover-up of their actions rather than seek to mitigate the harm the Disclosure had made and would make.

57. The intentional disclosure of information in violation of the Privacy Act is the cause of Special Agent Brusseau's damages plead herein.

58. The agencies knew the information should have been clawed back as much as possible and should have notified Special Agent Brusseau, but they have instead sought to hide their misdoing, rather than correcting it, even when the violation was clearly made known.

59. The intentional decision of the DOJ and DHS not to disclose their initial violation of the Privacy Act or attempt to remedy it is itself a further violation of 5 U.S.C. § 552a(b) and

exacerbated the damage and injury to Special Agent Brusseau's reputation and pecuniary damages.

60. Further, the Defendants did not notify the federal court handling the FOIA suit that the representations made to the court that the criminal investigation and the OPR investigation were complete, a necessary condition of the release of the Disclosed Information, was false at the time it was made.

WHEREFORE, plaintiff John Brusseau requests that the Court award the following relief,

(1) Find that the DHS and DOJ violated the Privacy Act;

(2) Award Plaintiff his actual damages of $460,000 proved at trial in accordance with 5 U.S.C. 552a(g)(4)(A), but not less than the statutory amount of $1000;

(3) Award Plaintiff his reasonable costs and attorney's fees as provided in 5 U.S.C. 552a(g)(4)(B);

(4) Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

John A. Brusseau, Plaintiff

By Counsel: /s/ William R. Thetford Jr.
H. Robert Showers, Esq. (VSB# 34799)
William R. Thetford Jr., Esq. (VSB# 92558)
*Simms Showers, LLP*
305 Harrison Street, S.E., Third Floor
Leesburg, VA 20175
(703) 771-4671 – telephone
(703) 771-4681 – facsimile
hrs@simmsshowerslaw.com
wrt@simmsshowerslaw.com
*Counsel for the Plaintiff, John A. Brusseau*