IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOHN BRUSSEAU | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1364 |
| | ) | (LMB/IDD) |
| DEPARTMENT OF HOMELAND SECURITY | ) | |
| and DEPARTMENT OF JUSTICE, | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
PURSUANT TO THE COURT'S ORDER**

The records Defendants released to Anham and Mr. Belbeisi demonstrate that the release

did not violate Plaintiff's Privacy Act rights for at least three reasons. First, the records clarify

that Immigration and Customs Enforcement ("ICE") properly construed Anham and Mr.

Belbeisi's request as *both* a FOIA request *and* a Privacy Act request seeking records about Mr.

Belbeisi, who had provided a valid authorization for release of those records. And, the records

released fully demonstrate that *only* records regarding Mr. Belbeisi were released. For this

reason alone, Plaintiff's Privacy Act claim fails. Second, the records demonstrate that the release

of information was also required under FOIA, and ICE released only the information for which it

could not support a FOIA redaction. Third, the records demonstrate that any release of

information regarding Plaintiff was not willful. ICE painstakingly redacted portions virtually

every page of the more than 300-page release. Indeed, aside from exhibit cover pages and copies

of regulations, the entire release contains only *one page* without any redactions. And, although

ICE missed two redactions of Plaintiff's name, both of those missed redactions occurred on

documents *Anham* had given *ICE*, thus precluding any claim that the release harmed Plaintiff.

ICE's only other missed redaction regarding Plaintiff was a single instance of failing to redact

1

his initials.  These minor accidents in a large release cannot constitute any "willful" violation.  Thus, for this third independent reason, Plaintiff's Privacy Act claim fails.  For all of these reasons, as well as those identified in Defendants' opening and reply memoranda supporting their motion to dismiss, Defendants respectfully request that their motion to dismiss be granted.

I.      **The Records Demonstrate that ICE's Release of Information to Mr. Belbeisi and Anham Was Valid Because It was ICE's Response to a Privacy Act Request for Records about Mr. Belbeisi**

First and foremost, the records demonstrate that ICE's release of information was valid as a response to a Privacy Act request seeking records *related to Mr. Belbeisi*, for which ICE had received a valid authorization of release *from Mr. Belbeisi*.  *See* 5 U.S.C. § 552a(b) (authorizing release to "pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains"); Record of Release ("ROR") (Dkt. Nos. 24-25) at 1 (request seeking records about Mr. Belbeisi), 5 (authorization of release by Mr. Belbeisi).  Indeed, ICE's response to the request explicitly states, "ICE has considered your [Anham and Mr. Belbeisi's] request under both the FOIA, U.S.C. § 552, *and the Privacy Act, 5 U.S.C. § 552a*.  Information about an individual that is maintained in a Privacy Act system of records may be accessed *by that individual* unless the agency has exempted the system of records from the access provisions of the Privacy Act."  Record of Release ("ROR") at 28 (emphasis added).  ICE's construction of this request was consistent with the Privacy Act itself.  5 U.S.C. § 552a(d)(1).  And, as fully explained in Defendants' opening and reply memoranda, when documents responsive to a Privacy Act request include protected information regarding both the requester and other parties, the agency is required to release the information to the requester with the other parties' information redacted.  *See* Def. Mem. (Dkt. No. 13) at 12-13; Def. Reply (Dkt. No. 21) at 15-16; *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 57 (D.D.C. 2013); *Carlborg v. Dep't of Navy*, 2020 WL 4583270, at *7 (D.D.C. 2020).   This is exactly what ICE did here.  *See* ROR at 31-292, 384-446.

Notably, Plaintiff does not—and cannot—identify a single document or piece of information released that does *not* relate to Mr. Belbeisi and that ICE was not therefore required to release in response to Mr. Belbeisi's own Privacy Act request. *See generally* Pl. Supp. (Dkt. No. 30). Indeed, when Anham and Mr. Belbeisi sought information that related exclusively to *Plaintiff* and *not* Mr. Belbeisi, *i.e.*, information about "what happened between [Plaintiff] and his HSI supervisors after the investigation regarding the release," Defendants explicitly refused to provide such information because "[i]nformation related to any employment action taken against [Plaintiff] by his supervisor would be withheld pursuant to the Privacy Act and FOIA Exemption (b)(6), (b)(7)(C), and (b)(7)(E)" absent "a privacy waiver" from Plaintiff. ROR 367. Thus, ICE was explicitly required to release these documents to Anham and Mr. Belbeisi pursuant to their Privacy Act request seeking documents regarding Mr. Belbeisi, and ICE properly released them. On this basis *alone*, Plaintiff's Privacy Act claim must be dismissed.

## II.      The Records Demonstrate the Release Was Required By FOIA

As fully explained in Defendants' opening and reply memoranda, ICE properly released records to Anham and Mr. Belbeisi under FOIA pursuant to 5 U.S.C. § 552a(b)(2). Plaintiff's supplemental memorandum makes clear that Plaintiff has brought this action primarily as an attempt to collaterally attack a FOIA release, but as fully explained in Defendants' briefing, a "plaintiff generally cannot rely on a claim that a FOIA exemption *requires* the withholding of information from disclosure" and the Privacy Act offers no authority to tender such a claim. *Tripp v. DOD*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002); Def. Reply (Dkt. No. 21) at 5-6. Moreover, the record of the release demonstrates that ICE conducted a careful assessment of the information released and withheld that information that it could justify under a FOIA exemption.

### A.      ICE Properly Determined that the Records Were Not Withholdable under FOIA Exemption 7(A)

Although Plaintiff again attempts to argue that ICE originally withheld documents pursuant to the *criminal* investigation of Anham and Mr. Belbeisi and then improperly changed its mind, this is belied by the records. *See* Pl. Supp. at 2. In fact, the documents were originally withheld because the ICE FOIA office erroneously believed the *Office of Professional Responsibility* ("OPR") investigation that was the subject of the FOIA request remained ongoing. *See* ROR at 25. The criminal investigation was, and has always been, irrelevant to the FOIA request, as it exclusively sought documents regarding the *OPR* investigation. ROR at 1-3. Upon Anham and Mr. Belbeisi pointing out that the OPR investigation had been completed for *over a year* and ICE verifying that information, ICE determined that it has no basis to withhold the documents under Exemption 7(A) and released the documents, subject to other exemptions. MSJ DEX 3 (Jnt. Status Report, Dkt. No. 7, *Anham v. DHS*, 18-2773 (D.D.C.)). ROR at 132.

The records themselves demonstrate that only the OPR investigation was relevant to the release. Notably, the records ICE released are not part of ICE's criminal investigative file. *See* ROR at 156, 460-61. The request itself did not seek documents regarding the *criminal* investigation, or even reference its existence. ROR at 1-2. ICE thus searched for documents located in *OPR*, and in the possession of the OPR investigators involved in the *OPR* investigation. ROR at 156, 460-61. ICE never search for *any* documents with anyone involved in the *criminal* investigation. *Id*. Thus, because the *OPR* investigation was complete, ICE correctly determined that it could not withhold the OPR investigative file under Exemption 7(A).

Additionally, although Plaintiff argues—with no citation to any documentation—that the OPR "investigation was not concluded until at least April 2019," *see* Pl. Supp. at 2, this is plainly erroneous. The records clearly demonstrate that the investigation was completed on April 3, *2018*—eleven months *before* any release of documents. *See* ROR at 132 (closing investigative

4

file on April 3, 2018, and referring the matter to management to determine any discipline based on the results of the investigation).  Thus, ICE correctly determined at the time of its March *2019* release that the OPR investigation had been completed, and the records must be released.

      **B.**      **The Records Demonstrate that Information Was Not Improperly Released under Exemptions 6 and 7(C)**

Plaintiff also has failed to demonstrate that information was improperly released under Exemptions 6 or 7(C).  First, although Plaintiff alleges that ICE improperly released "false allegations" against him "with the false appearance of government approval," Pl. Supp. at 2, the records demonstrate no such thing.  The records exclusively demonstrate that ICE's OPR investigated allegations made against Plaintiff.  Nothing in the record demonstrates any "appearance of government approval" of the allegations.  *See generally* ROR.

At the outset, the *only* pages in the ROR that Plaintiff specifically identifies as problematic are ROR pages 44, 45, 52, 53, and 54 and the transcript at ROR 118-211.  *See* Pl. Supp. at 2-3.  But, ROR pages 44, 45, 52, 53, and 54 merely recite the allegations to be investigated, and explicitly state them as allegations.  *See* ROR at 44, 45, 52, 53, and 54.  There is literally nothing in these pages that suggests any "appearance of government approval."  *Id*. Nor do these pages even contain any identification of Plaintiff.  *See id*.  And, although Plaintiff complains that the OPR report of investigation notes that OPR received notice of the allegations through a DOJ attorney, *see* Pl. Supp. at 2, Plaintiff himself alleged that the allegations were made by Anham's criminal defense attorney to a DOJ attorney, *see* Compl. ¶ 21.  And, elsewhere in the report, OPR clarifies that both Plaintiff and the DOJ attorney were on the phone when they reported the allegations to OPR.  *See, e.g.*, ROR 114.

Moreover, with respect to the transcript of the interview at ROR 118-211, there is nothing at all *personal* to Plaintiff in the transcript.  ROR at 118-211.  The interview simply details

Plaintiff's actions with respect to Mr. Belbeisi.[1]  *See id*.  Nothing in these pages could be deemed an invasion of *Plaintiff's* personal privacy.  *See id*.  And, although Plaintiff alleges that the transcript "clearly identif[ies]" him, he fails to identify *where*.  Pl. Supp. at 3.  Indeed, aside from one stray unredacted set of initials, ROR at 182, Plaintiff is not named *anywhere* in the transcript.  *See* ROR 180-211.

Furthermore, although Plaintiff alleges that redaction of his name is insufficient to address his privacy interest, the cases he cites for this proposition are easily distinguishable from the instant action.  *See* Pl. Supp. at 3 n.2.  Indeed, not one of these cases involves the release of information pursuant to the Privacy Act rights of the individual to whom the information was released, *see id*., as occurred in the release of information at issue in this litigation.  *See* ROR at 28.  And, both the Fourth Circuit and courts in the District of D.C.—where the FOIA litigation that resulted in this release occurred—explicitly require and/or affirm agencies' release of information to a Privacy Act requester with any third parties' information redacted, which is exactly what ICE did here.  *See Neely v. FBI*, 208 F.3d 461, 463-64 (4th Cir. 2000); *Mobley*, 924 F. Supp. 2d at 57); *Carlborg*, 2020 WL 4583270, at *7.[2]  Thus, ICE properly released the investigative file to Anham and Mr. Belbeisi with Plaintiff's identifying information redacted.

---

[1] Although the interview includes a recitation of federal positions Plaintiff has held, it is well established that federal employees have no expectation of privacy in their federal positions.  *See* OPM Regulation, 5 C.F.R. § 293.311 (specifying federal employees' names and positions are publicly available information).

[2] The cases cited by Plaintiff also did not involve agencies who had published as a routine use of their administrative investigative files that information about the investigation would be released to the victim of the alleged misconduct.  Because ICE has published this Routine Use, ICE could not justify refusing to release the investigative file to Mr. Belbeisi, and thus released it in the heavily redacted form produced here.  *See Privacy Act of 1974; Department of Homeland Security-DHS/ALL 020 Internal Affairs Systems of Records*, 79 Fed. Reg. 23361-01, 23365.

**C.      Plaintiff Lacks Standing to Complain about Information Released Regarding Other Witnesses**

Although Plaintiff complains that ICE failed to redact all instances of the names of witnesses, Pl. Supp. at 3, as fully explained in Defendants' reply brief and pursuant to binding Fourth Circuit authority, Plaintiff lacks any standing to complain about the release of information regarding individuals other than himself. *See* Def. Reply at 8-9; *Reinbold v. Evers*, 187 F.3d 348, 359 n.11 (4th Cir. 1999) (holding a party cannot assert a Privacy Act claim on behalf of another individual). Moreover, the records further demonstrate ICE took great pains to redact information relating to any third party witnesses. Indeed, virtually every page of the release is redacted, in part to remove these individuals' names. And, although there are a handful of instances in which ICE accidentally missed a redaction, Plaintiff cannot claim any Privacy Act violation in these accidental omissions as they provide no personal information about *Plaintiff*.[3]

**D.      The Records Demonstrate that Information Was Not Improperly Released under Exemption 7(E)**

Notably, although Plaintiff argued in his opposition to Defendants' motion to dismiss that ICE's release of records was improper because it revealed confidential investigative techniques, he did not identify any documents releasing such information. *Compare* Pl. Opp. at 9-10 *with* Pl. Supp. (failing to identify any information disclosing investigative techniques).

Thus, the records demonstrate that ICE released only that information that it was required to release under FOIA. This constitutes a second and independent basis on which Plaintiff's Privacy Act claim fails.

**III.      The Records Demonstrate that ICE's Release of Information Identifying Plaintiff Was Not Willful**

---

[3] Plaintiff's assertion that these witnesses were unknown to Anham and Mr. Belbeisi at the time also is incorrect, as demonstrated by the witnesses' interviews and text messages. *Compare* Pl. Supp. at 3 *with* ROR at 68-110, 124-29, 157-59, 243-57, 259-92, 303-17, 358-60.

Plaintiff's Privacy Act claim also fails because he cannot demonstrate that ICE's release of information regarding him was willful. *See Scrimgeour v. IRS*, 149 F.3d 318, 326 (4th Cir. 1998) (holding that a plaintiff can only demonstrate a Privacy Act violation where the disclosure was willfull and "the standard for intentional or willful behavior under the Privacy Act has been articulated as an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act"). As the records demonstrate, despite the fact that over 300 pages of documents were produced, Plaintiff is identified—at most—only *three times*. ICE twice missed Plaintiff's name when redacting the very documents that Anham and Mr. Belbeisi had produced *to* ICE. *See* ROR at 121, 395. But, as these documents originated with Anham and Mr. Belbeisi, the inclusion of his name on these documents did not reveal any information to them whatsoever. And, although ICE missed redaction of Plaintiff's initials one time in his transcript, ROR at 182, this single error in the multitude of redactions throughout the documents cannot constitute any "willful" violation of Plaintiff's rights.

Furthermore, although Plaintiff argues that Defendants released information regarding Plaintiff "after Defendants knew of [a] Privacy Act violation," Plaintiff fails to identify any records elucidating this argument. Pl. Supp. at 3-4. For all of the reasons Defendants have identified *supra* and in its opening and reply memoranda, no Privacy Act violation has occurred, and there has been no release "after Defendants knew of [a] Privacy Act violation." *Id*. As such, Plaintiff has failed to demonstrate any willful disclosure, and, in fact, the records demonstrate the exact opposite. Thus, for this third independent reason, Plaintiff's Privacy Act claim fails.

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendants' opening and reply memoranda, Defendants respectfully request that all of Plaintiff's claims be dismissed.

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

_____/s/_____
KIMERE J. KIMBALL
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3763 (direct)
kimere.kimball@usdoj.gov

June 28, 2021                                   *Attorney for Defendants*

9