IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN A. BRUSSEAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-1364 (LMB/IDD) |
| ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, et al., ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"), which has been fully briefed, argued in open court, and supplemented with the materials that defendants produced in connection with a Freedom of Information Act ("FOIA") lawsuit filed in the United States District Court for the District of Columbia.[1] For the reasons that follow, the Motion to Dismiss will be granted.

## I. BACKGROUND

### A. **Procedural Background**

On November 11, 2020, John Brusseau ("Brusseau" or "plaintiff") filed a one-count Complaint under the Privacy Act, 5 U.S.C. § 552a, et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201 against the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ") (collectively, "defendants"). Brusseau alleges that defendants violated the

---

[1] Although the disclosed materials were not attached to the Complaint, consideration of these materials does not convert defendants' Motion to Dismiss to a motion for summary judgment. The disclosure was referenced extensively in the Complaint, and the parties have raised no issue of authenticity with respect to the materials, which they jointly submitted. See Phillips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Privacy Act by disclosing his personal information "without notifying [him] or seeking or obtaining a waiver from him." [Dkt. No. 1] at 1. For relief, he seeks $460,000 in actual damages for various harms he alleges he suffered as a result of the disclosure, or "not less than the statutory amount of $1000" and his attorneys' fees and costs. Id. at 13.

Defendants filed a joint Motion to Dismiss on April 9, 2021. After oral argument, which included allegations that the disclosure improperly revealed a confidential source and information about an ongoing criminal investigation, the Court ordered defendants to produce for in camera review the entire Record of Release ("ROR"), which exceeded 300 pages in length. Those materials were filed on June 4, 2021. [Dkt. Nos. 24, 25].

### B. Factual Background

The Complaint alleges the following facts. Brusseau is a special agent for Homeland Security Investigations ("HSI"), an investigative body within U.S. Immigration and Customs Enforcement ("ICE"), which is a subcomponent of the DHS. As an HSI investigator, Brusseau is responsible for investigating administrative and criminal violations. He has been employed by HSI since at least 2011. [Dkt. No. 1] at ¶¶ 1-5, 12-13.

In 2011, Brusseau was assigned to an HSI money laundering and fraud investigation targeting two defense contractors, Unitrans International, Inc. ("Unitrans") and Anham USA, Inc. ("Anham").[2] [Dkt. No. 1] at ¶¶ 14, 17. This investigation ultimately resulted in criminal charges against Unitrans and Anham, both of which were resolved with the DOJ when the companies paid millions of dollars in fines as part of settlement agreements. Although the Complaint does not indicate when the criminal investigations of these companies concluded, a

---

[2] The investigation also targeted various corporate relatives of Unitrans, and the Dubai corporation Anham FZCO. [Dkt. No. 1] at ¶ 14. At the time of the investigation, Unitrans and the Anham entities all shared a CEO and other officers. Id. at ¶ 16.

2

DOJ press release from December 4, 2019 announced that Unitrans had agreed to pay $45 million to resolve criminal obstruction and civil False Claims Act allegations against it.[3] At that time, a civil qui tam action was pending against Anham in this district.

In 2017, while the investigation was ongoing, Anham's financial director Marwan Belbeisi ("Belbeisi") accused Brusseau of misconduct, including that he had disclosed confidential information about Belbeisi to a former Anham employee, who Brusseau asked to make "illegal promises and threats about government actions" to Belbeisi. [Dkt. No. 1] at ¶ 21. Bruce Baird ("Baird"), an attorney with Covington & Burling who represented Anham in connection with the HSI investigation, conveyed Belbeisi's accusation to a DOJ trial attorney, James Gelber ("Gelber"). Id. Baird also provided Gelber with a transcript of text messages, purportedly between Belbeisi and the former Anham employee, which supported Belbeisi's allegations. The Complaint alleges that the accusations of misconduct were false, and that the text message transcript was "falsified and/or manipulated." Id. at ¶¶ 21-23. Once Brusseau became aware of the misconduct allegations against him, he self-reported the matter to the ICE Office of Professional Responsibility ("OPR"). Id. at ¶ 26. OPR investigated the allegations against Brusseau; however, as far as Brusseau is aware, "no findings were ever made against [him], and no disciplinary action, or even a reprimand, was ever imposed." Id. at ¶ 27.

On September 18, 2018, while HSI's investigation into Unitrans and Anham was ongoing, Belbeisi and Anham, through their counsel, Baird, submitted a FOIA request to DHS seeking information about the OPR investigation. [Dkt. No. 1] at ¶ 28. DHS denied the request, on the ground that "the information related to an open criminal investigation." [Dkt. No. 1] at

---

[3] See https://www.justice.gov/opa/pr/defense-contractor-agrees-pay-45-million-resolve-criminal-obstruction-charges-and-civil-false (last visited July 22, 2021).

3

¶ 30. On November 27, 2018, Anham, through counsel, filed a FOIA complaint in the U.S. District Court for the District of Columbia, <u>Anham FZCO v. Dep't Homeland Security</u>, No. 1:18-cv-2773 (D.D.C.), in which Anham alleged that it had a statutory right to the records requested and that DHS and ICE had "failed to properly respond to [its] request." [Dkt. No. 1] at ¶ 31; [Dkt. No. 13-1] at 4.[4]

While Anham's FOIA lawsuit was pending, and without being ordered to do so by the district court, DHS determined that it could produce the OPR file with appropriate redactions, and produced the file to Baird. In their Motion to Dismiss, defendants explain that they advised the D.C. court about the basis for changing their objection to the disclosure.[5] The Complaint alleges that DHS's disclosure included:

> [T]he false allegations against Special Agent Brusseau and his professional reputation for honesty and integrity; the falsified text messages alleged to support the allegations; information indicating that DHS conducted an investigation into Special Agent Brusseau as a result of the false allegations, and other protected information including the name and personal identifying information of a protected

---

[4] Anham's FOIA request identified a single category of records: "All documents related to the resolution of the investigation conducted by DHS and led by Special Agent Tarrah Romanoff, Resident Agent in Charge of the Office of Professional Responsibility in Fairfax, Virginia, into conduct by Homeland Security Investigations Special Agent John Brusseau related to his efforts to contact and obtain information from Mr. Belbeisi. The investigation was conducted between December 2017 and May 2018." <u>Anham</u>, 1:18-cv-2773, Complaint [Dkt. No. 1] at ¶ 9 (D.D.C. Nov. 27, 2018).

[5] In a Joint Status Report filed in the D.C. court, DHS explained:

> Department of Homeland Security, Immigration and Customs Enforcement ("ICE") initially concluded that the requested records pertained to an ongoing law enforcement investigation, but after conferring with Plaintiff, it has determined that the investigation is not ongoing. Consequently, it is processing responsive records and will make an initial release by March 1, 2019. ICE hopes to be able to release all responsive records in a single release, but it is still determining the number of pages that must be processed.

[Dkt. No. 13-3] at 2. In a later joint status report, DHS informed the district court that it had "released 259 pages of responsive records on March 1, 2019 with numerous redactions based on [FOIA] Exemptions 6, 7(A), 7(C), and 7(E)." [Dkt. No. 13-4] at 2.

4

source of information and other source identity information that ultimately harmed the criminal investigation ... .

[Dkt. No. 1] at ¶ 34. In addition, the disclosure allegedly did not include "the result of DHS's investigation of [Brusseau]: DHS never made a finding against [Brusseau] and never imposed any discipline or reprimand against him." Id.

Brusseau alleges that he was not informed of the disclosure before it took place, and did not give written consent to any disclosure. After DHS had already disclosed the documents to Anham, Brusseau was contacted by the Office of the Principal Legal Advisor ("OPLA") for ICE, which "falsely led [Brusseau] to believe that a release of records was only contemplated, but had not yet occurred." [Dkt. No. 1] at ¶¶ 40-41. Brusseau asked to see the documents before they were disclosed, and a representative from OPLA told him that the office would let him know, in spite of the fact that the disclosure had already been made. Id. at ¶ 42. The Complaint alleges that the harms plaintiff has suffered as a result of the disclosure include harm to his reputation; "mental distress, embarrassment, and emotional harm"; denial of his promotion to a GS-14 position (with a $12,000 increase in salary); loss of opportunities in the "Washington, D.C. metropolitan area job market," including a loss in future earnings which plaintiff calculates at $200,000; and out-of-pocket expenses for therapy and counseling. [Dkt. No. 1] at ¶¶ 52-53.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). As defendant properly argues, a complaint must be more than speculative, and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[A] plaintiff's obligation to

5

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citations omitted). When considering a motion to dismiss, a court must assume that the facts alleged in the complaint are true and resolve factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009); however, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. Id. A court may consider "documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, Md., 684 F.3d 462, 467 (4th Cir. 2012) (quoting Phillips v. Pitt Cty. Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

## B. Analysis

Plaintiff alleges that defendants' disclosure of documents violated the Privacy Act, 5 U.S.C. § 552a(b), which provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," subject to certain exceptions. [Dkt. No. 1] at ¶¶ 46-48.[6] To

---

[6] Plaintiff also alleges that because the disclosure did not indicate that the OPR investigation into his conduct did not result in discipline, defendants violated § 552a(e)(6), which provides:

> (e) Agency requirements.--Each agency that maintains a system of records shall—
>
> (6) prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to [FOIA], make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes[.]

To the extent plaintiff intended for subsection (e)(6) to stand as an independent basis for relief, it is directly contradicted by the allegations in the Complaint. Plaintiff alleged that after OPR investigated the misconduct complaint against him, "no findings were ever made against [him], and no disciplinary action, or even a reprimand, was ever imposed." Plaintiff cannot plausibly allege that defendants violated the Privacy Act by failing to disclose the formal findings of an

6

successfully plead a claim for an improper disclosure in violation of the Privacy Act, a plaintiff must allege four elements: "(1) the disclosed information is a 'record' contained within a 'system of records'; (2) the agency disclosed the information; (3) the disclosure adversely affected the plaintiff; and (4) the disclosure was willful or intentional." Richards v. CIA, 837 F. Supp. 2d 574, 579 n.4 (E.D. Va. 2011). Defendants do not contest that the documents it produced to Anham were "records" contained within a "system or records," or that DHS, through its legal counsel from DOJ, disclosed the information. Instead, defendants argue that disclosure was required by FOIA and compelled by the FOIA litigation in the United States district court of the District of Columbia, and that the disclosure was authorized by the Privacy Act under the "routine use" exception.

1. FOIA Exemptions

As the Complaint alleges and the parties agree, the disclosure of the OPR file was made in response to a FOIA lawsuit seeking that file. The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency ... unless disclosure of the record would be ... required by" FOIA. 5 U.S.C. § 552a(b)(2) (emphasis added). On the other hand, the Privacy Act "prohibit[s] disclosure where FOIA allows the agency to refuse disclosure." Alvarez v. U.S. Dep't of Treasury, No. 1:10CV175, 2012 WL 3686780, at *5 (N.D. W. Va. Apr. 26, 2012), R&R adopted, No. 1:10CV175, 2012 WL 3656496 (N.D. W. Va. Aug. 24, 2012), aff'd 516 F. App'x 266 (4th Cir. 2013). As a result, although defendants argue that DHS's disclosure was required by FOIA, the success of this argument depends on whether any of FOIA's many exemptions could have been applied to the disclosure at issue.

---

investigation which he claims produced no findings, and plaintiff does not allege that any other specific record was made declaring his innocence. [Dkt. No. 1] at ¶ 27.

7

Plaintiff argues that the at least five different FOIA exemptions apply to the challenged disclosure, only one of which must apply to take the disclosure out of the Privacy Act's FOIA exception. The FOIA exemptions plaintiff identifies are:

- 5 U.S.C. § 552(b)(6): "[P]ersonnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."
- 5 U.S.C. § 552(b)(7)(A): "[R]ecords or information compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement proceedings."
- 5 U.S.C. § 552(b)(7)(C): "[R]ecords or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."
- 5 U.S.C. § 552(b)(7)(D): "[R]ecords or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source ...."
- 5 U.S.C. § 552(b)(7)(E): "[R]ecords or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

[Dkt. No. 18] at 7-14.

A thorough review of the ROR makes clear that none of the exemptions which plaintiff identifies apply to any of the documents it contains. Exemptions (6) and (7)(C) do not apply because no information disclosed in the ROR "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In all 400-plus pages of the disclosure, plaintiff's name (or in one instance, a misspelling of his name) appear unredacted only 3 times. ROR 28, 161, 356. None of these stray failures to redact plaintiff's name create any "associat[ion] ... with alleged wrongful activity," because, as defendants correctly argue, the records clearly document an investigation into allegations and not a finding of wrongdoing. Cf. Mueller v. U.S. Dep't Air Force, 63 F. Supp. 2d 738, 743 (E.D. Va. 1999); see [Dkt. No. 31] at 5.

Exemptions (7)(A), (7)(D), and (7)(E) are likewise inapplicable. Plaintiff asserts that these exemptions apply because the documents in the ROR relate to the "internal investigation

8

regarding Special Agent Brusseau," which he argues was ongoing at the time of the release [Dkt. No. 30] at 2; however, the records themselves clearly disclose that the OPR investigation was concluded on April 3, 2018—months before the documents were released to Anham in response to the FOIA lawsuit. See ROR 132. More importantly, regardless of whether the OPR investigation or the criminal investigation into Anham were ongoing when the disclosure was made, there is nothing in the disclosure which could "reasonably be expected to interfere with enforcement proceedings"; "reasonably be expected to disclose the identity of a confidential source"; or "disclose techniques and procedures for law enforcement investigations or prosecutions" that "could reasonably be expected to risk circumvention of the law." See 5 U.S.C. §§ 552(b)(7)(A), (7)(D), and (7)(E). As defendants accurately summarize, "the records further demonstrate that ICE took great pains to redact information relating to any third party witnesses ... And, although there are a handful of instances in which ICE accidentally missed a redaction, Plaintiff cannot claim any Privacy Act violation in these accidental omissions as they provide no personal information about Plaintiff." [Dkt. No. 31] at 7 (emphasis in original).

For these reasons, it is clear that no FOIA exemption would have permitted DHS to withhold the records in response to Anham's FOIA lawsuit; however, even if an exemption could conceivably apply to any of the unredacted material, there is simply no basis on which to find that the disclosure of any FOIA-exempted material was willful. See Richards, 837 F. Supp. 2d at 579 n.4 (holding that a disclosure must be willful or intentional to violate the Privacy Act). The documents included in the disclosure fully support defendants' argument that any release of exempted information was not intentional:

> ICE painstakingly redacted portions [of] virtually every page of the more than 300-page release. Indeed, aside from exhibit cover pages and copies of regulations, the entire release contains only one page without any redactions. And, although ICE missed two redactions of Plaintiff's name, both of those missed redactions occurred

on documents <u>Anham</u> had given ICE, thus precluding any claim that the release harmed Plaintiff.

[Dkt. 31] at 1 (emphasis in original). Simply put, the extent and thoroughness of the redactions in the ROR contradict the conclusory allegations in the Complaint that "DOJ and/or DHS knowingly and intentionally ... or with more than gross negligence, released Plaintiff's personnel information without regard to whether the Disclosure was prohibited by the Privacy Act and in violation of Plaintiff's rights." [Dkt. No. 1] at ¶¶ 54-55. As a result, the Complaint does not satisfy <u>Twombly</u>'s plausibility requirement, and must be dismissed.

2. <u>"Routine Use" Exception</u>

For the reasons explained above, the Court's review of the ROR establishes that defendants have not violated the Privacy Act because FOIA required the disclosure of the documents; however, even if FOIA did not apply, the disclosure would nevertheless have been authorized under the Privacy Act's "routine use" exception. Section 552a(b)(3) prohibits agencies from disclosing records unless "disclosure of the record would be ... for a routine use," which the statute defines as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. §§ 552a(b)(3), 552a(a)(7). In order for the "routine use" exception to apply, the agency must "publish in the Federal Register ... a notice of the existence and character of the system of records, which notice shall include ... each routine use of the records contained in the system, including the categories of users and the purpose of such use." <u>Id.</u> at § 552a(e)(4)(D). Based on these provisions, courts in this district have identified "two distinct tests that must be satisfied for a disclosure to qualify" as a routine use: "First, the disclosure of a record must be compatible with the agency's purpose in collecting the record, and second, the disclosure must be in accordance with the 'routine uses' the agency has published in

the Federal Register." Fattahi v. Bureau of Alcohol, Tobacco & Firearms, 186 F. Supp. 2d 656, 660 (E.D. Va. 2002), aff'd 328 F.3d 176 (4th Cir. 2003).

As the statute requires, DHS has published a System of Records Notice ("Notice") for its "Internal Affairs Systems of Records,"[7] explaining its purpose in collecting records and identifying what constitutes a "routine use." Privacy Act of 1974; Department of Homeland Security-DHS/ALL 020 Internal Affairs Systems of Records, 79 Fed. Reg. 23361-01 (Apr. 28, 2014). In the Notice's summary, it explains the purpose for collecting the records maintained in the system:

> This system collects and maintains records relating to investigations, including allegations of misconduct, resultant investigations conducted by Department of Homeland Security (DHS) Headquarters or its components, and any of the individuals involved in such investigations with the exception of records of investigations conducted by the Office of the Inspector General.

Id. at 23361. As the Complaint alleges, the records in the ROR include what plaintiff describes as "the false allegations against [him] …; the falsified text messages alleged to support the allegations; information indicating that DHS conducted an investigation into [him] as a result of the false allegations, and other protected information including the name and personal identifying information of a protected source of information." [Dkt. No. 1] at ¶ 34. Such "allegations of misconduct" and "records relating to … resultant investigations" are precisely in line with the purpose DHS identifies in the summary of the Notice.

The disclosure also satisfies the second test identified by the district court in Fattahi: "the disclosure [is] in accordance with the 'routine uses' the agency has published in the Federal Register." 186 F. Supp. 2d at 660. The Notice DHS published in the Federal Register identifies

---

[7] Although plaintiff argues that the disclosure was outside the scope of this Notice, he appears to concede that it is the "relevant" System of Records Notice ("SORN") for the records in question. See [Dkt. No. 18] at 16.

11

certain "[r]outine uses of records maintained in the system, including categories of users and the purposes of such uses," one of which is: "To notify or provide a victim or complainant of the progress or results of an investigation relating to an integrity, disciplinary inquiry, review, or inspection complaint relating to an integrity, disciplinary inquiry, review, or inspection complaint." 79 Fed. Reg. at 22365. Plaintiff admits that the disclosure at issue was made to Belbeisi, through his counsel, and that Belbeisi was the "complainant" who initiated "an investigation relating to an integrity [or] disciplinary inquiry, review, or inspection." [Dkt. No. 1] at ¶¶ 21, 28-32. The Complaint acknowledges that Belbeisi's information request, submitted through his counsel, was limited to requesting "information related to the investigation into [Brusseau]." Id. at ¶ 29. By plaintiff's own account, the information DHS disclosed clearly matches the "routine use" established in the Notice.

Plaintiff argues that application of the "routine use" exception at the pleadings stage is inappropriate, because "Defendants cannot show the purposes for the disclosure at all at this stage, other than the improper purposes alleged by the Complaint." [Dkt. No. 18] at 14. Although plaintiff cites to authority which requires a "case-specific" analysis of the "purpose" of a disclosure, he offers no support for the proposition that "purpose" should be conflated with subjective intent. Id. at 15 (quoting Britt v. Naval Invest. Serv., 886 F.2d 544, 546 (3d Cir. 1989)). On the contrary, the Fourth Circuit has declined to consider an agent's "subjective analysis" of why he was required to disclose certain records, even when it was available on a fully developed summary judgment record. See Fattahi, 328 F.3d at 179. Instead of considering the subjective motivation of an agency's decisionmakers, courts considering the "routine use" exception at the dismissal stage look to whether a disclosure "was compatible with the purpose for which the information was collected." Budik v. United States, 949 F. Supp. 2d 14, 29

(D.D.C. 2013); see also Gardner v. United States, No. CIV. A. 96-1467, 1999 WL 164412, at *6 (D.D.C. Jan. 29, 1999). Because the disclosure in this case was compatible with the "routine use" established by the Notice in the Federal Register, it is not necessary to develop a record that shows that the individuals responsible for the disclosure harbored the "improper purposes" alleged by plaintiff. [Dkt. No. 18] at 14.

Plaintiff next argues that defendants cannot rely on the "routine use" exception because § 552a(e)(3)(C) requires that agencies collecting information must "inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual ... the routine uses which may be made of the information, as published" in the Federal Register. [Dkt. No. 18] at 18-19. Plaintiff maintains that because he did not receive the notice form required by subsection (e)(3)(C), the "routine use" exception does not apply; however, § 552a(j)(2) permits agencies to exempt systems of records from (e)(3)(C), which is precisely what DHS has done for its Internal Affairs System of Records. See 79 Fed. Reg. at 23366 ("The Secretary of Homeland Security has exempted this system from the following provisions of the Privacy Act[:] ... (e)(3) ...."). Outside of the requirements of (e)(3), "[a]n individual's consent to release of information about him that is contained in agency records is not required when the 'routine use' exception is applicable." Fattahi, 186 F. Supp. 2d at 660 (emphasis in original). In fact, it is not clear that plaintiff would have needed to receive any (e)(3) notice even if it were required, because it appears that much if not all of "the information in the instant case was not gathered from Plaintiff, but from third parties." Gardner, 1999 WL 164412 at *6 (dismissing Privacy Act claim).

Finally, plaintiff argues that DHS's disclosure was "outside the scope" of the routine uses identified in the Notice, and that to find otherwise would read the "routine use" exception "so

13

broadly as to swallow the rule by creating a glaring loophole in ... the Privacy Act." [Dkt. No. 18] at 16-18. Plaintiff does not cite any authority to support his argument that the routine use identified in the notice—"[t]o notify or provide a victim or complainant of the progress or results of an investigation"—limits DHS to disclosing "only a simple one-page status report (indicating whether the investigation is 'pending' or 'complete')." [Dkt. No. 18] at 16. Adopting plaintiff's "one-page status report" requirement, which he appears to have invented out of whole cloth, would place the Court in the position of "making a judgment that Congress intended [DHS] to make." Fattahi, 328 F.3d at 179. Similarly, there is no support for plaintiff's argument that applying an exception that Congress enacted as part of the Privacy Act would somehow be contrary to congressional intent. [Dkt. No. 18] at 17-18.

Both the allegations in the Complaint and the Court's review of the released documents support the conclusion that DHS's disclosure was "compatible with the agency's purpose in collecting the record" and "in accordance with the 'routine uses' the agency has published in the Federal Register." Accordingly, the Complaint fails to state a claim for a violation of the Privacy Act. Fattahi, 186 F. Supp. 2d at 660; Budik, 949 F. Supp. 2d at 30 ("Because the defendants' disclosure of the information being challenged by the plaintiff falls within the routine use exception of § 552a(b)(3), the Court must dismiss the plaintiff's Privacy Act claim.").

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 27 day of July, 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge