THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JOHN A. BRUSSEAU,                    .     Civil Action No. 1:20cv1364
                                     .
              Plaintiff,             .
                                     .
     vs.                             .     Alexandria, Virginia
                                     .     October 8, 2021
DEPARTMENT OF HOMELAND               .     10:24 a.m.
SECURITY (DHS) and DEPARTMENT        .
OF JUSTICE,                          .
                                     .
              Defendants.            .
                                     .
.   .   .   .   .   .   .   .   .   .   .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:              WILLIAM R. THETFORD, JR., ESQ.
                                Simms Showers LLP
                                305 Harrison Street, S.E.
                                Third Floor
                                Leesburg, VA 20175


FOR THE DEFENDANTS:             KIMERE J. KIMBALL, AUSA
                                REBECCA S. LEVENSON, AUSA
                                United States Attorney's Office
                                2100 Jamieson Avenue
                                Alexandria, VA 22314


OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Third Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595


(Pages 1 - 17)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

P R O C E E D I N G S

THE CLERK: Civil Action 20-1364, John A. Brusseau versus Department of Homeland Security (DHS), et al. Would counsel please note their appearances for the record.

MR. THETFORD: Good morning, Your Honor. Will Thetford for John Brusseau.

THE COURT: All right, Mr. Thetford.

MS. KIMBALL: Good morning, Your Honor. Assistant United States Attorney Kimere Kimball and AUSA Rebecca Levenson for DHS and DOJ.

THE COURT: And who's going to be arguing the case here?

MS. KIMBALL: I am, Your Honor.

THE COURT: All right, Ms. Kimball. Then you stay at the top table.

All right, before the Court is the plaintiff's motion to reconsider the Court's earlier ruling which dismissed this civil action or, in the alternative, motion for leave to amend the amended complaint. The proposed amended complaint was attached, so I've had a chance to read, Mr. Thetford, what you anticipated filing if the Court were to give you leave to do so.

I've looked at your pleadings with care, and a lot of it, I think, we don't need to hear any argument about. The -- I think the defendant does make a decent argument that the

requirements of Rule 59 have not adequately been satisfied here.

59(e), as you know, makes it discretionary with the Court whether to grant a motion to reconsider, and there are normally just three bases upon which one would grant such a motion: a change of the applicable law, there's certainly not been any representation that that's the case; and what I think the plaintiff is trying to rely upon is new evidence, but the problem is, as the government points out, none of that evidence was newly discovered. It was available before the original complaint was filed. So that's normally not a sufficient ground to grant a 59(e) motion. And the last would be clear error of law or to prevent a manifest injustice.

Now, in terms of a clear error of law, I'm satisfied, having reread my opinion and the briefing, that the Court's ultimate decision that the disclosure of the information was within the routine use exception is fully supported by the law and by the way in which DHS functioned in this case. The notice requirements for making an exception to the Privacy Act were complied with. The exceptions for OPR investigations are clearly in the Federal Register.

I made that finding previously, and I think it is correct, and so I don't think even with the new information about some concern about whether there was a Privacy Act violation, I don't think it's there.

Moreover, the government's response does explain -- and this is a complicated case -- that there were really two systems of records here. There was the OPR system of records, and under the routine use exception, the DHS allows for those records to be disclosed to the complaining party, but there was also the personnel file for Agent Brusseau, and the interesting thing here is, as I understand it, the letter of, I'll call it the exoneration letter, although it's not really all that exonerating, it's just the letter making -- we make no finding, and where no finding of misconduct was made, that letter was in a different file, and that letter's disclosure would be problematic, and that's why we have this exchange of communications by the attorney who saw that. But having looked now at the explanation for all of that, I'm satisfied that there was no problem here.

But the biggest problem that exists for the plaintiff and the one, Mr. Thetford, that I want you to address for me today is that one of the elements for a Privacy Act claim is that the disclosure had to have had an adverse effect on the plaintiff. That's the *Fattahi* case against the Bureau of Alcohol, Tobacco, and Firearms. And the Supreme Court has weighed in in the *FAA v. Cooper* case that holds that actual damages do not include mental or emotional distress but is limited to proven pecuniary or economic harm.

And the government has pointed out in their

opposition that there are insufficient allegations in your complaint, and I checked the amended complaint, and the amended complaint and the original complaint are exactly the same in your description of what the harms are, and I don't see how in the two complaints that are before me you have alleged a single fact that would support a damage claim, and if you can't meet that element at the pleading stage, then dismissal is also appropriate on that ground.

And your simple answer to that was that discovery will show damages at a 12(b)(6) motion is not sufficient. So I'd like you at the lectern.

MR. THETFORD: Yes, I'm happy to address those concerns, Your Honor, and I'll begin --

THE COURT: Well, begin with the damages because that's --

MR. THETFORD: I'll begin with the damages. I think that's the Court's concern. Let me address that specifically. And, Your Honor, I don't have the case before me right now. That was actually cited in the original response to the 12(b)(6) motion to dismiss.

That was not the basis for the Court's ruling in the memorandum opinion, but we did address the actual damages argument at that point, and one of the elements of damages that can be shown that satisfies for a Privacy Act violation is out-of-pocket damages, so the mental distress by itself would

not suffice.  Out-of-pocket damages addressing mental distress is, and courts have ruled that explicitly, and that is what we're relying upon in this case.

If you look -- let me find, if I can pinpoint this precise subpart here, I believe it's going to be under paragraph 53 of the original complaint.  It's j on page 12: "Further, Special Agent Brusseau has paid out-of-pocket expenses to consult with a clinical psychologist and counselor to address the stress, betrayal, and other ramifications of the defendants' wrongful disclosure, breach of trust, and failure to remedy the problem."

And so I think that is sufficient for that element.  You're right that more disclosure -- sorry, excuse me, more discovery may reveal other things, but at this point, that is enough to surpass that particular hurdle on the damages element.

THE COURT:  Well, you say "this release."  Now, "this release" refers to the Privacy -- your alleged violation of the Privacy Act.

MR. THETFORD:  That is correct.

THE COURT:  All right.  Now, I've already found, I mean, the law of this case is I have found there has been no violation of the Privacy Act because, again, of the routine use exception that DHS has.  Maybe -- I don't know what other executive branch agencies have, whether they all have the

similar type of exception, but as I read what's in the Federal Register, which is the notice where the public was told what is excepted from the Privacy Act, OPR investigative files are exempt from the Privacy Act.

That's what I ruled before, and I have no reason or basis on which to change that. I'm not changing that view. But even if there were a Privacy Act violation, I think the damages issue also needs to be more fleshed out for purposes of the record.

And the problem -- and the government has, I think, well argued this case -- is that the real -- the public disclosure of the fact that there was an OPR investigation against your client and that the allegations involved in that were that the -- that your client had told a former employee confidential information about this Anham company and its director, that he had also asked a former employee to approach this Mr. Belbeisi to pass along both promises and threats about official government agency.

And so those allegations were made in a publicly filed FOIA complaint filed in the District of Columbia. That's where the first public disclosure about the existence of an OPR investigation and the basic nature of that investigation occurs. And so it's not the DHS's disclosure of what that investigation involved but the actual publication that the investigation even existed that in my view is what causes your

problem.

So what I want you to explain to me is what, if anything, in the disclosed record -- because we've all looked at it. You got of a copy of it, right, as a result of the last hearing?

MR. THETFORD: That's correct. I saw a copy of it as well.

THE COURT: All right. What within that record is so much more problematic for your client than what existed in the publicly filed FOIA complaint?

MR. THETFORD: Yes, Your Honor. Well, there are two things for that, and I also want to address the routine use as well --

THE COURT: No, address that question.

MR. THETFORD: -- but I want to start with your concerns first.

The first aspect is the fact that in Mr. Brusseau's line of business, he expects that people on the opposite side that he is investigating may make accusations against him or disagree with him. That's understandable. But what he does not expect is when his own employer releases false allegations made against him.

When the government itself releases the allegations against him and the OPR investigation showing that they took this seriously and they investigated him, and especially when

they released the investigation, the complete investigation file without the finding at the end showing that they don't find any wrongdoing, they're not going to impose any discipline, that harms Agent Brusseau's reputation, and so it is now not only an accusation against him. There are some elements in the, certainly in his, in his world and where he may go after he retires, the kinds of job that he will look, that is a severe mark against his reputation for integrity and reliability, and it has serious financial ramifications for him as well as emotional ramifications. And so that is the first concern that we have.

The second concern is the OPR records themselves are not exempted by the routine use exemption. The routine use exemption does not say the entirety of the OPR file. It says providing information as to the progress or results of the investigation.

And so we would argue that progress or results cannot be defined to mean the entirety of the file. It looks like it's actually speaking to a subset of the file, but what the facts seem to reveal is it's the entirety of the OPR file. The entirety of the OPR file, of course, is directly linked, and it's the same subject matter of the underlying criminal investigations files. It's another reason why it's inappropriate --

THE COURT: But, you know, anybody who's looked at

that file, and that's why I insisted on seeing it before I made a final ruling, although it's over -- it's, what, 2 or 300 pages, I forget exactly how long it is, but the point is it is so repetitive. If you really looked at how much actual specific information is in it, there are not that many pages. It's repeated page after page after page.

Secondly, it's heavily redacted. We all know that. There's tons of pages of just black.

So in terms of what was actually revealed, how much more meat was on the bones, and the fact that -- it's just not there. I do not -- I do not find on the record that's before me that there was anything significant that was disclosed in that disclosure that would create the kind of problems that you're talking about.

Now, let me ask you another question: When did your client apply for the promotion?

MR. THETFORD: Your Honor, he applied for the promotion, I believe, several times before and after the disclosure, during the pendency of the OPR investigation. I'm happy to present more information on that if that is required. I don't have the exact timeline of that, Your Honor.

THE COURT: But, I mean, in terms of your -- in terms of your, again, your damage claim, something that could possibly be actual or pecuniary damage, you've alleged that he didn't get this promotion because not of -- because of the

Privacy Act violation, but the reality of it is if -- and there's nothing in this record that would suggest one way or the other -- if the investigation had any impact on his promotion, the problem exists with the lawyer who files the complaint in the first place. That's where it originates, any problems with his conduct in this investigation.

MR. THETFORD: And, Your Honor, that is one of the difficulties in the case is there are several different actors who have done different things to my client, Agent Brusseau. This case, you're right, is solely about the response by the government, and so it may be true that this opposing attorney did something wrong, perhaps it is even defamation, but what my client is particularly hurt by is the fact that his employer as well as the DOJ working with his employer released this information to further, further increase and exacerbate whatever damage to his reputation occurred with the original false allegations that were made against him.

His position is, and it's a very reasonable position, is that when the government releases those allegations again in a government file with the imprimatur of the government, so to speak, other people view that with a much higher degree of credibility, even if those facts do not deserve that credibility.

And, Your Honor, if I could point you to the *Mueller* decision, *Mueller v. Department of the Air Force*, that's a case

that we previously indicated, and it's another case that was cited in your opinion, Your Honor. I believe it's on page, page 8. In that case, they specifically ruled that a similar OPR-type record, it was about 900 pages in that case, was something that could not be released about that particular employee.

Now, they were looking at a potential FOIA exemption in that case, and they stated that that was not able to be released due to the interaction of FOIA in that case and the Privacy Act, even though the person was eventually, eventually exonerated of the allegations against that individual, and even though the person seeking those records is actually the family of the person, in this case, it was a prosecutor, that she had allegedly done prosecutorial misconduct. That is almost on all fours with our case.

And in that case, the fact that she was exonerated actually served to -- this was an Eastern District of Virginia case, Your Honor. In that case, the fact that she was eventually exonerated only further helped her case because they did not want to release -- the court did not want to release all of the details of the investigations, the transcripts, the report of investigation that would sully her name unnecessarily given the fact that everyone who looked at it eventually decided that she should be exonerated.

The fact that she was investigated was publicly

known, and there were articles written about that, but that did not change the Court's opinion that in the end, that information would not have been appropriate to release.

THE COURT: All right. Let me hear the government's response.

MS. KIMBALL: Thank you, Your Honor. I'll address the *Mueller* decision first. First of all, it's not on all fours with this case. That was an Air Force matter. It doesn't have the same routine uses as this matter, so the entire routine use exemption was not present there.

Also, as plaintiff noted, it was not the victim of the, of the alleged misconduct that was seeking the information. It was the family of the prosecutor. That precludes any release of the information under FOIA exemption (b)(6), which is not present here because Mr. Belbeisi was requesting his own records and had signed a Privacy Act release regarding that.

THE COURT: Now, what did you -- by the way, I did want you to address because I think this came up in the papers, the plaintiff is arguing that Belbeisi does not have standing to waive Privacy Act issues because he's not a U.S. citizen or a lawful permanent resident.

MS. KIMBALL: Actually, what plaintiff argued was that he was under investigation to have his OPR status revoked.

THE COURT: So he actually has OPR status at this --

or he did at that time.

MS. KIMBALL: That's my understanding based on the allegations of the complaint. I haven't run that down completely, but that's my understanding. And that was certainly ICE's -- that was certainly ICE FOIA's understanding when they released the information to him.

THE COURT: All right.

MS. KIMBALL: And as Your, as Your Honor noted, there is no direct tie of any, or any pecuniary damages, which is required in a Privacy Act claim, related to the specific information that was released in the -- released in the FOIA file. The only information released about plaintiff, three instances of his name not being redacted, he hasn't identified any pecuniary damage from that.

To the extent that he wasn't promoted, first plaintiff noted that he wasn't promoted both before and after the release. It's clearly not causally related to the release.

Also, the -- ICE is well aware of the OPR investigation. You can't promote a federal employee without going through an OPR check to make sure that there's no issue.

So the fact of the investigation was known to ICE. The fact that it was released in a FOIA litigation has no bearing on any employment decision, and plaintiff has failed to allege that that would be the case.

Unless Your Honor has further questions?

THE COURT: All right. Well, as I said, this comes to the Court in a post-decisional context, and as I said at the very beginning, I'm not satisfied that the plaintiff has properly even complied with Rule 59, but I did reconsider. We looked at the new information.

I don't find that the correspondence establishes any kind of sufficiently new information that changes my initial view that, again, that the Privacy Act was not violated here under the routine use exception that applies to this particular agency; and secondly, despite a very articulate response by Mr. Thetford, I'm satisfied that the damage issue would also be absolutely fatal to this case being able to go forward. It's just not there.

The real injury, the real harm to this plaintiff came from the initial public disclosure of the complaint in that FOIA litigation, and that was not DHS's fault. That was coming from the attorneys, who might have had a rather clever way of trying to tarnish the case agent.

You're right, there's a problem with what happened here. I am concerned about, you know, clever white collar defense tactics, trying to undercut a criminal investigation by casting aspersions about a lead agent. That's, that's problematic, but that's not this case. So I am going to deny the motion to reconsider.

I've also, as I said, I've looked at the proposed

amended complaint. Although the courts are expected to liberally grant requests to file amended complaints, where it would be an act of futility, the Court can deny such a request.

I think for the reasons that I've already stated in the previous opinion as well as today, that it would be an act of futility to go forward any further on this case. So I'm going to deny the motion to file the amended complaint, and we'll enter a final judgment in the defendants' favor.

The one thing I would strongly recommend, however, since this agent is still working with the agency and he appears to, you know, had obviously had a significant assignment in this investigation, I think you should at the very least look into, assuming the evidence supports it, a stronger exoneration letter that could be placed in his personnel file that might assuage some of his angst about the impact that this whole incident has had on his career.

You know, a finding of, you know, it looked like a kind of mealy-mouthed, maybe that's the standard response, but it might be something you could talk with plaintiff's counsel about getting a better letter in his file. I think that that might be something that might assist him a bit. It was certainly one of the things he complained about in the, in the remedies area.

All right, that concludes the docket for today. We'll recess court.

Did you want to say something?

MS. KIMBALL:  Yes, Your Honor.  Sorry, just one thing.

THE COURT:  Yeah.

MS. KIMBALL:  I realized just before coming into court that plaintiff had filed the privileged documents both attached to the motion and to the memorandum, and so we would like leave to seek to seal the privileged documents.

THE COURT:  They're already out there.

MS. KIMBALL:  Okay.

THE COURT:  I'm going to deny that motion.  They're part of the public record at this point.  You should have moved sooner.

MS. KIMBALL:  Okay.

THE COURT:  All right, we'll recess court.

(Which were all the proceedings had at this time.)

CERTIFICATE OF THE REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

_____/s/_____
Anneliese J. Thomson